CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
December 10, 2025
LAURA A. AUSTIN, CLERK
BY: s/ K. SAVILLE
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVIN MICHAEL ROBINSON,<br><br>Defendant. | Case No. 7:25mj245<br><br>**Filed Under Seal** |

## CRIMINAL COMPLAINT AFFIDAVIT

I, Special Agent Ryan Kennedy, being first sworn, depose and state as follows:

### INTRODUCTION

1. I am an FBI special agent and have been since August 2021. I currently work in the FBI Richmond, Virginia, Field Office, Roanoke Resident Agency. I handle and investigate various criminal and national security matters, including violent crimes, narcotics offenses, federal bank robberies, and fugitive apprehensions. I am trained and experienced in conducting investigations, interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, computer evidence identification, and various other criminal laws and procedures.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth everything I know about this matter.

3. Based on my training and experience and the following facts, there is probable cause to believe that Kevin Michael Robinson, *inter alia*, received material involving the sexual exploitation of minors, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1).

## TECHNICAL COMPUTER-RELATED TERMS

4. As used in this affidavit, the terms listed below have the following definitions:

   a. "Child pornography" refers to the definitions in 18 U.S.C. § 2256(8)(A), (C).

   b. "Obscene representations of child sex abuse" refers to obscene visual depictions of minors engaging in sexually explicit conduct, including drawings, cartoons, sculptures, paintings, or computer-generated images, even if the minors depicted do not actually exist.

   c. "Child sex abuse material" ("CSAM") refers both to child pornography and obscene representations of child sex abuse, as defined above.

   d. "Computer" refers to the definition in 18 U.S.C. § 1030(e)(1).

   e. "Minor," as defined in 18 U.S.C. § 2256(1), refers to a person under 18 years old.

   f. "Sexually explicit conduct" refers to the definition in 18 U.S.C. § 2256(2).

   g. "Visual depiction" refers to the definition in 18 U.S.C. § 2256(5).

   h. "Child erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves illegal, or that do not necessarily depict minors engaged in sexually explicit conduct.

## PROBABLE CAUSE

5. On or about June 20, 2018, Robinson, a private first class in the U.S. Marine Corps ("USMC"), pled guilty at a general court-martial to distribution of pornography, possession of child pornography, viewing of child pornography, communicating indecent language, solicitation of production of child pornography, solicitation of distribution of child pornography, and attempt

to child distribute pornography (two specifications[1]). The military judge sentenced Robinson to 10 years' confinement, a dishonorable discharge, reduction to E-1, and total forfeitures.

6. On or about August 27, 2024, Robinson signed a certificate in anticipation of mandatory supervised release ("MSR"),[2] agreeing to, *inter alia*, not break the law during MSR. On or about December 10, 2024, the Naval Consolidated Brig Miramar asked the U.S. Probation Office for the Western District of Virginia ("WDVA") to accept supervision of Robinson.

7. On or about March 12, 2025, U.S. Probation Officer ("USPO") Haylea Workman had Robinson sign an attachment to his MSR certificate, agreeing to additional supervision conditions, including participation in the Computer Monitoring Program and permitting the U.S. Probation Office to install monitoring software on his electronic devices.

8. Robinson also explicitly agreed that his electronic devices would be subject to periodic, unannounced searches to ensure that monitoring software was functioning properly:

> 18. The defendant must allow the U.S. Probation Office to conduct initial and periodic unannounced searches of any computer devices or networked systems used or possessed by the defendant. Initial searches of computer devices and networked systems will be conducted to determine if they contain or allow access to any materials or capabilities which would violate the Court's ordered conditions; or programs/applications, settings, configurations that would be problematic for monitoring software (if ordered) and Cybercrime Management Program requirements. Periodic unannounced searches of these devices and systems will be conducted to verify that the monitoring software is functional (if ordered), that required configurations are unaltered, and that no circumvention efforts have been made to alter the device's operation(s) or functionality.; KMR INITIALS

9. Likewise, Robinson agreed to submit his electronic devices to searches by a USPO based on reasonable suspicion that he violated conditions of supervision and that the devices contained evidence of such violations:

---

[1] Under the Uniform Code of Military Justice ("UCMJ"), charged counts are referred to as "specifications."
[2] The Department of Defense and U.S. Office of Probation and Pretrial Services have a memorandum of understanding allowing U.S. probation offices to supervise individuals on military MSR.

> 19. The defendant shall submit his or her person, property, house, residence, vehicle, papers, 'computers as defined in 18 USC § 1030(e)(1), other electronic communication, network or cloud storage, or data storage devices or media], or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his or her supervision and that the areas to be searched contain evidence of this violation.; KMR INITIALS

10. On or about June 9, 2025, Robinson released from custody and began his MSR term. On or about June 11, 2025, he met USPO Workman at her office in Roanoke. Robinson explained that he lived alone at his house in Wirtz, located within the WDVA, and didn't have a cellphone yet. USPO Workman told Robinson that he could purchase an Android cellphone, but it would require computer monitoring software.

11. During the meeting, USPO Workman and Robinson reviewed Robinson's conditions of release. Robinson understood his conditions and reported that he had already reviewed them in-depth with military authorities. USPO Workman gave Robinson a computer monitoring agreement and questionnaire, with instructions to read it carefully and send it back. Robinson said he understood.

12. Later that day, Robinson advised USPO Workman that he got a cellphone (a Samsung Galaxy S25). On or about June 13, 2025, USPO Workman conducted a home inspection. Robinson provided his monitoring questionnaire back.

13. In line with Robinson's conditions, on or about June 18, 2025, Internet Probation & Parole Control ("IPPC") installed monitoring software on Robinson's cellphone.

14. On or about July 1, 2025, IPPC emailed USPO Workman, advising that on or about June 30, 2025, the monitoring software alerted that Robinson possessed obscene depictions of child sexual abuse material ("CSAM"), in violation of 18 U.S.C. § 1466A. The same day, USPO Workman and two supervisory USPOs met Robinson at his home in Wirtz. USPO Workman told

4

Robinson that the monitoring software indicated he was watching animated child pornography. Robinson admitted to viewing inappropriate material, expressed remorse, and said he wasn't ready for a smartphone. Robinson agreed to obtain a flip phone without internet access.

15. Robinson gave USPO Workman permission to search his phone. His internet history was partially deleted. When asked if he deleted his internet history, Robinson admitted he deleted the browser he used to search for anime child pornography. USPO Workman explained that they were seizing his phone for further analysis.

16. On or about July 18, 2025, USPO Workman sent Robinson's phone to a forensic lab with the U.S. Probation Office for the District of Utah, which it received on or about July 22, 2025. Supervisory USPO John Pyburn obtained a full extraction of the phone data using Cellebrite Inseyets UFED, then used Cellebrite Inseyets Physical Analyzer to process and analyze the data.

17. Pyburn's analysis identified 20,200 images and 101 videos of sexually explicit content. Within those, SUSPO Pyburn found CSAM consisting of animated caricatures, realistic animation, and non-animated media.

18. On or about September 17, 2025, USPO Workman provided me a copy of Robinson's phone extraction.

19. By November 2025, I had fully reviewed Robinson's phone data. I found approximately 27 images of child pornography, as defined above. That is, 27 of the images fell into two categories:

   a. Visual depictions of minors engaged in sexually explicit conduct, where the production of the images involved the use of actual minors engaged in sexually explicit conduct, as defined by § 2256(8)(A).

5

b. Visual depictions created, adapted, or modified to show identifiable minors engaged in sexually explicit conduct, as defined by § 2256(8)(C).

20. The child pornography in the latter category, sometimes called "morphed" CSAM, included images of identifiable, famous child actresses engaged in sexually explicit conduct. These morphed images appeared to be produced with AI image-generating programs.

21. The child pornography images included prepubescent minors. Additionally, approximately three of the images depicted sadistic, masochistic, or violent conduct.

22. I also found approximately five videos constituting child pornography. One of these videos constituted morphed CSAM.

23. In addition to the child pornography, Robinson's phone held thousands of images of obscene representations of child sex abuse, ranging from caricatured cartoons to photorealistic computer-generated imagery.

24. Metadata from the CSAM indicated that it was downloaded using multiple apps from approximately mid-June to on or about June 30, 2025. Based on my review, I do not believe Robinson's phone had any apps that could have created the CSAM in the first instance. In other words, I believe Robinson used the internet and his cellphone apps to download all of the CSAM recovered from his phone.

25. On or about November 14, 2025, I received a report from the U.S. Probation Office showing keystrokes logged by Robinson's cellphone. This report was generated by the monitoring software on Robinson's cellphone, and it recorded various search terms entered into the phone. The report indicates that between approximately June 19, 2025, and June 30, 2025, Robinson typed the following terms into his phone: "jailbait," "Omegle teen porn" (Omegle was a videochat site known for surreptitious recording and child exploitation activity), "Omegle nudes," "Ai teen

6

nude," "Homemade teen nudes," "Homemade Joven cita porn" ("Jovencita" is a Spanish word for a young girl), "tween girl pokies" ("pokies" can be a slang term for a woman's protruding nipples), "little girl yog" ("yog" can be a shortform of "yoga"), "Loli porn" ("Loli" is a shortform of "Lolita," a common reference for child pornography), "Twen Beastiality vid" ("Twen" could be a misspelling of "tween," another search term Robinson used), and "Cailey flemin nudes" (Cailey Fleming is an 18-year-old actress, who was a minor during her most prominent roles).

## CONCLUSION

26. Based on the foregoing and my training and experience, there is probable cause that in June 2025, Kevin Michael Robinson, committed, *inter alia*, receipt of child exploitation material, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1), while in the WDVA.

Respectfully submitted,

*Ryan Kennedy*
RYAN KENNEDY
Special Agent
Federal Bureau of Investigation

Received by reliable electronic means pursuant to Federal Rule of Criminal Procedure 4.1 and subscribed and sworn to me by phone this 10th day of December, 2025.

*Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

7